MELDRUM & FEWSMITH, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30977, 35392. Promulgated July 8, 1953.

*H. Melvin Roberts, Esq.*, for the petitioner.
*Clarence E. Price, Esq.*, and *James A. Scott, Esq.*, for the respondent.

795

**OPINION.**

VAN FOSSAN, *Judge:* The initial question to be answered in these proceedings involves the respondent's determination that the income of the partnership should be attributed to the petitioner corporation. Our finding that the partnership was a separate entity for tax purposes is determinative that the respondent erred in this regard. The taxpayer has the right to choose the type of business organization which he prefers and is not required to adopt that form of organization which will result in the maximum tax upon business income. *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436. There is no evidence that the parties were motivated by possible tax avoidance or any improper purpose. It follows that the profits of the partnership cannot be attributed to the petitioner corporation for any of the years involved.

Turning to the second issue, the respondent conditionally concedes that the pension plan executed by the partnership in November 1944 and made effective as of January 1, 1945, met the requirements of the statute and that deductions should be allowed for the contributions made to that pension trust. The issue as to the deductions taken by the partnership is not before us and the respondent's conditional concession would have been important in these proceedings only if we had determined that the profits of the partnership should be attributed to the petitioner. The condition attached to the respondent's conces-

sion is, in effect, that if the Court determines that the profits of the partnership are not taxable to the petitioner, the respondent does not concede the amount of pension trust deductions to which the partnership would be entitled. Any issue with respect to the partnership must be determined in a proceeding relating to it. Only the petitioner corporation is before us in these proceedings.

The respondent further concedes that the petitioner is entitled to a deduction for its contribution to the pension trust in the fiscal year ended March 31, 1948. This leaves for determination only the pension trust deductions taken by the petitioner in the fiscal years ending March 31, 1943 and 1944.

The respondent disallowed as deductions contributions in the amounts of $10,186.95 and $27,685.32, respectively, in the fiscal years ending March 31, 1943 and 1944, which contributions were made to the pension trust created by the petitioner in March 1943. The respondent contends that the pension trust did not meet the requisites of section 165 (a) of the Internal Revenue Code[1] and that contri-

---

[1] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement and no other provision of this supplement shall apply with respect to such trust or to its beneficiary—

(1) if contributions are made to the trust by such employer, or employees, or both, for the purpose of distributing to such employees or their beneficiaries the corpus and income of the fund accumulated by the trust in accordance with such plan;

(2) if under the trust instrument it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries;

(3) if the trust, or two or more trusts, or the trust or trusts and annuity plan or plans are designated by the employer as constituting parts of a plan intended to qualify under this subsection which benefits either—

(A) 70 per centum or more of all the employees, or 80 per centum or more of all the employees who are eligible to benefit under the plan if 70 per centum or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding five years, employees whose customary employment is for not more than twenty hours in any one week, and employees whose customary employment is for not more than five month in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Commissioner not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees;

and

(4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

(5) A classification shall not be considered discriminatory within the meaning of paragraphs (3) (B) or (4) of this subsection merely because it excludes employees the whole of whose remuneration constitutes "wages" under section 1426 (a) (1) (relating to the Federal Insurance Contributions Act) or merely because it is limited to salaried or clerical employees. Neither shall a plan be considered discriminatory within the meaning of such provisions merely because the contributions or benefits of or on behalf of the employees under the plan bear a uniform relationship to the total compensation, or the basic or regular rate of compensation, of such employees, or merely because the contributions or benefits based on that part of an employee's remuneration which is

butions thereto cannot be deducted under section 23 (p), Internal Revenue Code.[2]   The petitioner asserts that the respondent is estopped

excluded from "wages" by section 1426 (a) (1) differ from the contributions or benefits based on employee's remuneration not so excluded, or differ because of any retirement benefits created under State or Federal law.

(6) A plan shall be considered as meeting the requirements of paragraph (3) of this subsection during the whole of any taxable year of the plan if on one day in each quarter it satisfied such requirements.

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(p) CONTRIBUTION OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent: .

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows:

(i) an amount not in excess of 5 per centum of the compensation otherwise paid or accrued during the taxable year to all the employees under the trust, but such amount may be reduced for future years if found by the Commissioner upon periodical examinations at not less than five-year intervals to be more than the amount reasonably necessary to provide the remaining unfunded cost of past and current service credits of all employees under the plan, plus

(ii) any excess over the amount allowable under clause (i) necessary to provide with respect to all of the employees under the trust the remaining unfunded cost of their past and current service credits distributed as a level amount, or a level percentage of compensation, over the remaining future service of each such employee, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, but if such remaining unfunded cost with respect to any three individuals is more than 50 per centum of such remaining unfunded cost, the amount of such unfunded cost attributable to such individuals shall be distributed over a period of at least 5 taxable years, or

(iii) in lieu of the amounts allowable under (i) and (ii) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 per centum of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, except that in no case shall a deduction be allowed for any amount (other than the normal cost) paid in after such pension or annuity credits are completely funded or purchased.

(iv) Any amount paid in a taxable year in excess of the amount deductible in such year under the foregoing limitations shall be deductible in the succeeding taxable years in order of time to the extent of the difference between the amount paid and deductible in each such succeeding year and the maximum amount deductible for such year in accordance with the foregoing limitations.

(B) In the taxable year when paid, in an amount determined in accordance with subparagraph (A) of this paragraph, if the contributions are paid toward the purchase of retirement annuities and such purchase is a part of a plan which meets the requirements of section 165 (a), (3), (4), (5), and (6), and if refunds of premiums, if any, are applied within the current taxable year or next succeeding taxable year towards the purchase of such retirement annuities.

(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165 (a), in an amount not in excess of 15 per centum of the compensation otherwise paid or accrued during the taxable year to all employees under the stock bonus or profit

from basing his disallowance of the deductions taken in the years ending March 31, 1943 and 1944, on the ground that the pension trust did not meet the qualifications of section 165 (a), Internal Revenue Code, because the only reason given for disallowance in the letter of October 7, 1944, was to the effect that the petitioner no longer had any employees on October 21, 1943, when the plan was submitted to the respondent. We find no basis for the application of estoppel in the instant case. The respondent determined the deficiency without specification of the reason why the deductions were disallowed. The petitioner must bear the burden of proving its right to the deductions upon all the evidence presented irrespective of the reasons

sharing plan. If in any taxable year beginning after December 31, 1941, there is paid into the trust, or a similar trust then in effect, amounts less than the amounts deductible under the preceding sentence, the excess, or if no amount is paid, the amounts deductible, shall be carried forward and be deductible when paid in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any such succeeding taxable year shall not exceed 15 per centum of the compensation otherwise paid or accrued during such succeeding taxable year to the beneficiaries under the plan. In addition, any amount paid into the trust in a taxable year beginning after December 31, 1941, in excess of the amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 15 per centum of the compensation otherwise paid or accrued during such taxable year to the beneficiaries under the plan. The term "stock bonus or profit-sharing trust", as used in this subparagraph, shall not include any trust designed to provide benefits upon retirement and covering a period of years, if under the plan the amounts to be contributed by the employer can be determined actuarily as provided in subparagraph (A). If the contributions are made to two or more stock bonus or profit-sharing trusts, such trusts shall be considered a single trust for the purposes of applying the limitations in this subparagraph.

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

(E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

(F) If amounts are deductible under subparagraphs (A) and (C), or (B) and (C), or (A), (B), and (C), in connection with two or more trusts, or one or more trusts and an annuity plan, the total amount deductible in a taxable year under such trusts and plans shall not exceed 25 per centum of the compensation otherwise paid or accrued during the taxable year to the persons who are the beneficiaries of the trusts or plans. In addition, any amount paid into such trust or under such annuity plans in a taxable year beginning after December 31, 1941, in excess of the amount allowable with respect to such year under the preceding provisions of this subparagraph shall be deductible in the succeeding taxable years in order of time, but the amount so deductible under this sentence in any one such succeeding taxable year together with the amount allowable under the first sentence of this subparagraph shall not exceed 30 per centum of the compensation otherwise paid or accrued during such taxable years to the beneficiaries under the trusts or plans. This subparagraph shall not have the effect of reducing the amount otherwise deductible under subparagraphs (A), (B), and (C), if no employee is a beneficiary under more than one trust, or a trust and an annuity plan.

If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, this paragraph shall apply as if there were such a plan.

assigned by respondent. *Standard Oil Co.*, 43 B. T. A. 973, affd. 129 F. 2d 363.

The respondent initially contends that the trust created by the petitioner in March 1943 does not qualify under section 165 (a), Internal Revenue Code, because of the provisions of section 3 (g) of the plan. That section provides that the trustee, with the advice of the participant, may, but shall not be required to, nominate the beneficiary or beneficiaries to whom the proceeds of the contract in respect of the participant shall be paid if the participant dies. It also provides that the trustee, with the advice of the participant, may, but shall not be required to, request any change of any previously designated beneficiary or beneficiaries. The respondent argues that this provision conflicts with the statutory declaration that the pension plan be for the exclusive benefit of the employees or the beneficiaries. He also relies upon the fact that this provision of the plan was amended in the later partnership plan. We do not agree with his construction of the statute. It does not specify who shall be the beneficiary or how one shall be nominated. Nor do we agree that the respondent's regulation, Regulations 111, section 29.165–1, which states substantially that the term "beneficiaries" includes the employee's estate, dependents, and persons who are the natural objects of the employee's bounty, as well as persons designated by the employee, precludes the inclusion of persons nominated by the trustee with the advice of the participant. The regulation does not purport to be all inclusive nor exclusive of such persons designated in the manner provided in the instant plan. Neither the statute nor the regulation bars the nomination by the trustee, with the employee's advice, of the employee's beneficiary.

The respondent objects also to section 3 (d) of the 1943 plan which provided that the trustee had the option to assign all of the trustee's right, title, and interest in and to each contract held in respect to each participant whenever the monthly rate of compensation of the participant was decreased. An alternative option to apply for a revision of the insurance contract to reduce the annual premium could also be exercised by the trustee. The later plan issued by the partnership in November 1944 eliminated the option to which the respondent objects but we do not find that this provision was potentially discriminatory, as respondent argues, so as to preclude the plan from meeting the requisites of section 165 (a), Internal Revenue Code. The trustee's option to assign his interest in the participant's contract cannot affect the obligation of the company under section 4 (a) to contribute annually an amount equal to the premium due on the retirement contracts purchased. Section 4 (c) is construed to set forth the only conditions under which the company may discontinue

contributions with respect to participants and the company is limited to the events there specified. If the trustee, upon the reduction of compensation of the participant, elects the option under section 3 (d) of the 1943 plan, we discern no method by which the company can rid itself of its incurred obligation or otherwise "squeeze out" or eliminate a participant from the benefits of the pension trust. The plan does not clearly set forth the result of the trustee's election of the first option but we construe the plan in its entirety to preclude the elimination of any participant from the benefits of the plan by operation of section 3 (d). The company's obligation will continue in all respects. The fact that the trustee is given the option is not a sanction of some method of discrimination in favor of any group of employees. We find no means or method of diversion of corpus or income from the exclusive benefit of the employees or their beneficiaries. The assignment of the trustee's right and title could not alter the rights to which the employee or his beneficiary might be entitled.

The respondent objects also to an alleged discrimination in the actual operation of the plan arising from section 4 (g) of the 1943 plan. That provision declares that no participant shall have any vested right in any asset of the trust fund prior to the approval by the respondent of the pension plan, as being in conformity with the requirements of section 165, Internal Revenue Code. This provision alone is not a basis for disqualification. *Surface Combustion Corporation*, 9 T. C. 631, affd. 181 F. 2d 444.

It is argued by respondent, however, that discrimination in favor of the petitioner's principal stockholders, Joseph Fewsmith and Barclay Meldrum, occurred, in fact, when, in November 1944, the trustee released their insurance contracts to them with only a portion of the cash surrender value being received. The insurance contracts for the other participants were converted at the same time into paid-up contracts and surrendered for cancellation and their cash surrender values. This distinction is said by respondent to discriminate in favor of the two principal stockholders since the participants in the plan were not to have vested rights in the fund prior to 5 years, nor did any provision of the plan allow a participant to acquire his contract. The new partnership plan eliminated section 4 (g) and added a new subsection 5 (b) with regard to a withdrawing participant. The 1943 plan was disapproved on October 7, 1944, and as a result of this act a new plan was drawn up in November 1944, effective as of the beginning of the following year. Neither Barclay Meldrum nor Joseph Fewsmith could participate in the new pension plan inasmuch as they were partners rather than employees in the newly created organization. The release of the insurance contracts to these two men did not occur as part of the operation of the original corporate pension plan

but as an intermediate step between the termination of the initial plan after the respondent's disapproval and the commencement of the later plan. Inasmuch as Barclay Meldrum and Joseph Fewsmith could not participate in the new plan, the release of their contracts was merely an equitable method of disposing of them when it became known that they would be unable to participate. The fact that the initial pension plan remained in operation only a short period cannot be used as a basis for discounting its validity. Its termination was due to the respondent's disapproval on the ground that the petitioner no longer had any employees. As demonstrated above, the objections raised by the respondent to the petitioner's pension plan adopted in 1943 are not well founded. The deductions claimed by the petitioner in the amounts of $10,186.95 and $27,685.32 in the fiscal years ending March 31, 1943 and 1944, must be allowed.

The final issue to be determined, the parties having eliminated by agreement the question of a capital stock deduction, is the deductibility of fees in the total amount of $17,000 in the fiscal year ending March 31, 1944. A fee of $2,000 was paid to an accountant who investigated the advisability of a change in the petitioner's accounting and also examined the tax consequences of a change in form of organization. The expenses incurred in determining the advisability of a change of organization have been held deductible as ordinary and necessary business expenses. *Francis A. Parker*, 6 T. C. 974. Similar treatment must be accorded to the accountant's fee here.

A fee of $15,000 was paid to an attorney who was originally employed with regard to the creation of the original pension trust and its amendments. This undertaking was directly related to the business carried on by the petitioner and any payment therefor is a deductible business expense. *Kornhauser* v. *United States*, 276 U. S. 145. This attorney was also engaged in an effort to determine a solution to the petitioner's working capital problem and aided in the formation of the partnership. That portion of the attorney's services rendered with respect to the solution of the petitioner's credit problem must be deemed an ordinary and necessary business expense incurred in an attempt to maintain the agency's ability to continue operation. The remainder of the attorney's services, rendered with respect to the organization of the partnership in October 1943, must be classified as a capital expenditure. On the whole record, we have found that two-thirds of the attorney's fee was paid with respect to services relating to the creation of the pension trust and the solution of the working capital problem and represents a deductible business expense. The remaining one-third of the fee is allocated to the services relating to the organization of the partnership and represents a capital expense. *Mill's Estate, Inc.*, 17 T. C. 910.

*Decisions will be entered under Rule 50.*