JIMMIE T. JERNIGAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jernigan v. Commissioner
Docket No. 7658-72.
United States Tax Court
T.C. Memo 1975-132; 1975 Tax Ct. Memo LEXIS 239; 34 T.C.M. (CCH) 615; T.C.M. (RIA) 750132; May 7, 1975, Filed James L. Shores, Jr., and Claude E. Bankester, for the petitioner. J. Leon Fetzer, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The *240 Commissioner determined deficiencies in the Federal income taxes and additions to tax of petitioner as follows: Taxable
Addition To Tax Year Ended
Deficiency
Sec. 6651(a)
December 31, 1969
$ 7,368.75
0
December 31, 1970
11,063.61
$ 1,041.44
$18,432.36
$ 1,041.44
As a result of concessions made by both parties, the following issues remain for decision: 1. When part of the total attorney's fee incurred by the wife in connection with a divorce proceeding is paid by the husband and part of the total fee is attributable to the production of alimony taxable to the wife under section 71, [1] may the parties to the divorce proceedings (by agreement incorporated into the divorce decree) allocate the portion of the total fee attributable to the production of alimony to the portion of the total fee paid by the wife?; and 2. Was petitioner's late filing of her income tax return for 1970 due to willful neglect rather than to reasonable cause rendering her liable for the addition to tax under section 6651(a)? *241 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated by this reference. At the time she filed her petition in this case, Petitioner Jimmie T. Jernigan was a resident of Birmingham, Alabama. She filed her individual Federal income tax returns for taxable years 1969 and 1970 with the Southeast Internal Revenue Service Center in Chamblee, Georgia. Her original and amended returns for the taxable year 1969 were filed on October 20, 1970 and January 4, 1971, respectively, and her return for the taxable year 1970 was untimely filed on July 26, 1971. Petitioner and Thomas Edgar Jernigan were married on July 12, 1964 and lived together as husband and wife until they separated on October 20, 1968. On February 21, 1969, petitioner filed a bill for legal separation in the Circuit Court, Tenth Judicial Circuit of Alabama, Equity Division, requesting, in part, an order for an equitable division of property, a reasonable sum as alimony for her support and maintenance, and reasonable attorney's fees. On April 18, 1969 the Circuit Court entered a final decree of divorce dissolving the marital relationship and granting petitioner *242 an absolute divorce. The petitioner and Mr. Jernigan entered into a memorandum of agreement and a typewritten "Addendum to Memorandum of Agreement" which were incorporated into the final decree of divorce. Paragraph 3 of the typewritten "Addendum to Memorandum of Agreement" provided as follows: Respondent will pay Twenty-five Thousand and no/100 Dollars ($25,000.00) of Complainant's solicitors' fees and Complainant will pay an additional solicitor's fee of Fifty Thousand and no/100 Dollars ($50,000.00) in equal monthly installments during the first year of this agreement for that part of their professional services which pertains to her alimony arrangements. [Emphasis added.] On April 17, 1969, Mr. Jernigan executed the following handwritten amendment to the memorandum of agreement and the addendum thereto: 4/17/69 To: Jimmie T. Jernigan As further consideration for the Memorandum of Agreement entered into today, I hereby agree to pay to you as additional property settlement an amount equal to any federal and state income taxes (including interest and penalties) which you may have to pay by reason of the disallowance of the deduction which you will claim for the $50,000 *243 legal fee which you will pay your attorney for their services in connection with your periodic alimony arrangements. /s/ Thomas Edgar Jerrigan In addition to the alimony and trust fund benefits provided under the final divorce decree and the addendum to memorandum of agreement incorporated therein, petitioner received free and clear property with fair market value upon receipt as follows: Residence
$150,000
Automobile
6,000
Farm
48,000
Cash
10,000
Petitioner incurred $75,000 in legal fees in connection with the divorce proceeding. By mutual agreement incorporated in the final divorce decree, the husband paid $25,000 of the legal fees, no portion of which was deducted by him for tax purposes, and the petitioner paid $50,000 in 12 equal monthly installments, namely $33,333.28 in 1969 and $16,666.72 in 1970. Two thousand dollars of the $75,000 legal fees was incurred in connection with petitioner's securing the divorce. Of the remaining $73,000 balance, $50,000 was incurred by petitioner for the production or collection of amounts includable in her gross income under section 71 of the Internal Revenue Code of 1954, and $23,000 *244 was incurred by petitioner in connection with the property settlement. In her 1969 income tax return the petitioner claimed a $33,333.28 deduction for attorney's fees she paid in 1969; however, no deduction was claimed in her 1970 income tax return for $16,666.72 in attorney's fees she paid in 1970. In the notice of deficiency the Commissioner disallowed $13,266.65 of the legal fees deducted by petitioner for the taxable year 1969 and allowed $10,033.37 for the taxable year 1970 for which petitioner claimed no such deduction. In April 1971, petitioner telephoned her accountant and asked him to get an extension of the time for filing her 1970 return. At the request of her accountant, petitioner went to the accountant's office on April 14, 1971 and signed the application for an extension of time to file her 1970 income tax return on July 15, 1971. She left the form at the accountant's office for mailing and relied upon her accountant to mail the request and to file her return within the time allowed. Petitioner's first visit to her accountant's office regarding her 1970 return was on April 14, 1971, and that was only for the purpose of signing the application for extension of time *245 to file. She did not take the information necessary to prepare her return to her accountant until sometime after April 14, 1971. Petitioner never inquired whether her application for extension had been granted. She expected her accountant to call her if it was not granted. Petitioner's accountant asked her if she had received a response from the Internal Revenue Service regarding the application. Although petitioner stated that she believed she had, she has failed to produce any response. Internal Revenue Service records at the Southeast Service Center in Chamblee, Georgia, and at the office of the district director of internal revenue in Birmingham, Alabama do not disclose receipt of any application for extension of time to file petitioner's income tax return for the taxable year 1970. Petitioner had no long standing practice with her accountant regarding the preparation and mailing of returns, because the only return he filed for her prior to her 1970 return was an amended return for 1969. Although petitioner was aware that the due date requested in the application for extension of time to file was the middle of July, she made no effort to get her return filed by that date. Petitioner's *246 1970 return was signed on July 19, 1971, and was filed on July 26, 1971. Petitioner's failure to timely file her 1970 income tax return was not due to reasonable cause. OPINION Of the $75,000 in legal fees incurred by the petitioner in connection with her divorce, $50,000 was attributable to the production or collection of amounts includable in her gross income under section 71. Pursuant to the mutual agreement incorporated in the final divorce decree, the husband paid $25,000 of the legal fees which the petitioner and her husband agreed were incurred in connection with the divorce and property settlement and the petitioner paid the remaining $50,000 in legal fees which petitioner and her husband agreed were incurred in connection with the production or collection of alimony. The petitioner paid her portion of the legal fees in 12 equal installments resulting in total payments of $33,333.28 in 1969 and $16,666.72 in 1970. The husband did not deduct any of the legal fees he paid under the agreement. In her 1969 income tax return, petitioner claimed a $33,333.28 deduction for legal fees she paid in 1969; however, she claimed no deduction in her 1970 income tax return for the $16,666.72 *247 in legal fees she paid in 1970. In the statutory notice of deficiency, the Commissioner disallowed $13,266.65 in legal fees deducted by the petitioner for the 1969 taxable year and allowed a $10,033.37 deduction for legal fees paid during the 1970 taxable year. Petitioner contends that when part of the total attorney's fee incurred by a wife in connection with a divorce proceeding is paid by the husband and a portion of the total fee is attributable to the production of alimony taxable to the wife, the parties to the divorce proceedings may agree that the portion of the total fee paid by the wife is attributable to the portion of the total legal fee incurred in connection with the production of alimony. Accordingly, petitioner argues that as a result of the above-described agreement which was incorporated with the final divorce decree, the entire $33,333.28 paid in 1969 and the entire $16,666.72 paid in 1970 were attributable to legal fees incurred in connection with the production and collection of alimony taxable to her under section 71 and thus were deductible by her in the years paid under the provisions of section 212(1). Respondent would have us disregard the provision in *248 the above-described agreement which provides that the petitioner's $50,000 payment was "for that part of their professional services which pertains to her alimony arrangements" arguing that since two-thirds of the petitioner's total legal fees were incurred for the production and collection of income, only two-thirds of the $50,000 paid by the petitioner should be treated as the amount she paid for legal fees incurred for the production and collection of income. Thus, respondent concedes that petitioner may deduct at least two-thirds of the legal fees she paid resulting in deduction of $22,222.17 in 1969 and $11,111.15 in 1970. There is no dispute as to the portion of the petitioner's total legal fees attributable to the production of alimony. If the petitioner had paid the entire $75,000 in legal fees she incurred in connection with the divorce proceedings, the respondent apparently would allow her to deduct the full $50,000 in legal fees attributable to the production of alimony in the years paid. However, because the husband paid a portion of the petitioner's total legal fees, we must decide on the basis of the record before us whether one-third of the amount paid by the petitioner *249 must be apportioned to nondeductible services. Section 1.262-1(b)(7), Income Tax Regs., provides as follows: (7) Generally, attorney's fees and other costs paid in connection with a divorce, separation, or decree for support are not deductible by either the husband or the wife. However, the part of an attorney's fee and the part of the other costs paid in connection with a divorce, legal separation, written separation agreement, or a decree for support, which are properly attributable to the production or collection of amounts includible in gross income under section 71 are deductible by the wife under section 212. This Court has held that amounts paid by a wife to her attorneys, allocable to obtaining alimony includable in her gross income, are deductible under section 212(1). Ruth K. Wild,42 T.C. 706 (1964). In Marion R. Hesse,60 T.C. 685 (1973), on appeal (C.A. 5, Aug. 13, 1974); (affd. C.A. 3, 1974), the wife entered into a contingent fee agreement with her attorney in which she was to pay him 10 percent of the value of any assets she received in a settlement. This agreement was separate and distinct from the arrangement to pay the attorney *250 for his services in the divorce proceedings. Pursuant to the divorce settlement, the husband agreed to pay legal fees incurred by his wife in connection with the divorce proceedings. This Court found that amounts paid by the husband to the wife's attorney satisfied the wife's obligation for legal fees incurred in connection with the divorce. Accordingly, we held that amounts paid by the wife to her attorney pursuant to the contingent fee agreement were deductible under section 212(1) because she paid legal fees incurred in connection with the production of alimony. [2]
We believe the instant case is disposed of by our holding in Marion R. Hesse,supra. Respondent attempts to distinguish the instant case from Hesse on the ground that in this case the wife had one contract with her attorneys while in Hesse the wife had two separate contracts with her attorney. This is a distinction without substance. The respondent does not contend the wife was any less liable for the total legal fees under the two separate contracts *251 in Hesse than under the single contract in the instant case. The crucial fact remains that in both cases, the husband paid part of the wife's total legal fees pursuant to an agreement attributing the husband's payment to legal fees incurred in connection with the divorce proceeding. And here, as in Hesse, there is no dispute as to the portion of total legal fees which was incurred in connection with the production of alimony taxable to petitioner. Because the validity or effect of an allocation agreement between adverse parties was not involved in Gerald G. Wolfson,47 T.C. 290 (1966), that case is distinguishable from Hesse and does not support respondent's argument. Based on the record before us, we are satisfied that the agreement between the petitioner and her husband who were adverse parties dealing at arm's-length is the best evidence of what portion of the total legal fees paid by the petitioner was incurred in connection with the production of alimony. We follow Hesse and hold that the entire $33,333.28 paid in 1969 and the entire $16,666.72 paid in 1970 were attributable to legal fees incurred in connection with the production of alimony *252 taxable to the petitioner under section 71 and were deductible by her in full in the year paid under section 212(1). The remaining issue is whether petitioner's late filing of her income tax return for 1970 was due to willful neglect rather than to reasonable cause rendering her liable for the addition to tax under section 6651(a). The petitioner has the burden of proof. Dritz v. Commissioner,427 F.2d 1176 (C.A. 5, 1970), affirming a Memorandum Opinion of this Court; William M. Bebb,36 T.C. 170 (1961). Proof that the petitioner's failure to timely file was not due to willful neglect is insufficient; petitioner must also establish that the failure was due to reasonable cause. West Virginia Steel Corp.,34 T.C. 851 (1960). The petitioner seeks to establish reasonable cause by showing that she relied upon her accountant to obtain an extension of time for filing and to prepare and file her 1970 return when due. The petitioner and her accountant each contended that the other failed to mail an application for extension of time to file on July 15, 1971. It makes no difference who was at fault. The petitioner is responsible for *253 the actions of her agents and she is liable for the delinquency penalty even if her accountant was at fault. A taxpayer cannot shift to his accountant the responsibility of timely filing a tax return and seeking an extension for filing. Logan Lumber Co. v Commissioner,365 F.2d 846 (C.A. 5, 1966), affirming a Memorandum Opinion of this Court; Jane U. Elliot,40 T.C. 304 (1963). The relevant facts with regard to this issue are set forth in our findings and no useful purpose would be served by restating them here. Viewing the entire record, we hold that the petitioner has failed to establish the requisite reasonable cause and we sustain the respondent on this issue. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to sections of the Internal Revenue Code of 1954 in effect during the years in issue, unless otherwise noted.↩
2. See also Hazel Porter,T.C. Memo 1966-79, affd. per curiam on another issue, 388 F.2d 670↩ (C.A. 6, 1968).